IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

APPEAL NO. 20-13494-CC

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EDGAR DIAZ-COLON,

Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

INITIAL BRIEF OF APPELLANT

---

JAMES T. SKUTHAN
Acting Federal Defender

KATHERINE HOWARD
Research and Writing Attorney
Appellate Division
NY Atty. Reg. No. 5624275
201 S. Orange Avenue, Suite 300
Telephone: 407-648-6338
E-mail: katherine_howard@fd.org
Counsel for Appellant

## Appeal No. 20-13494-CC

## *United States of America v. Edgar Diaz-Colon*

### CERTIFICATE OF INTERESTED PERSONS

The persons listed below have an interest in the outcome of this case:

Andrejko, Nicole M.

Cakmis, Rosemary

Chang, Emily C. L.

DerOvanesian, Martin

Diaz-Colon, Edgar Johan

Elm, Donna Lee

Grandy, Todd B.

Howard, Katherine G.

Hoffman, The Honorable Leslie R.

Irick, The Honorable Daniel C.

Kamalzadeh, A

Kelly, Jenna N.

Lopez, Maria Chapa

Mendoza, The Honorable Carlos E.

**Appeal No. 20-13494-CC**

***United States of America v. Edgar Diaz-Colon***

CERTIFICATE OF INTERESTED PERSONS – CON'T

Minor victims whose identities are protected

Rhodes, David S.

Skuthan, James T.

No publicly traded company or corporation has an interest in the outcome of this appeal

## STATEMENT REGARDING ORAL ARGUMENT

Appellant-Defendant Edgar Diaz-Colon respectfully requests oral argument on whether, given his mitigating history and characteristics, a 150-year sentence of imprisonment for production of child pornography is substantively unreasonable and "greater than necessary" to comply with the factors and purposes set forth in 18 U.S.C. § 3553(a)(2).

TABLE OF CONTENTS

Certificate of Interested Persons ............................................................. C1

Statement Regarding Oral Argument ........................................................ i

Table of Authorities.................................................................................. iv

Statement of Subject-Matter and Appellate Jurisdiction ........................ v

Statement of the Issue .............................................................................. 1

Statement of the Case ............................................................................... 2

I.     Course of Proceedings ................................................................... 2

II.    Statement of the Facts ................................................................... 2

   A.  Mr. Diaz-Colon's childhood: abandonment, abuse, and
       mental health struggles............................................................ 2

   B.  Mr. Diaz-Colon's adulthood: struggles to maintain
       employment, the destruction of a meaningful
       relationship, and self-medication ............................................ 4

   C.  Offense conduct and charges ................................................... 6

   D.  Sentencing................................................................................ 8

      1.  Submissions before sentencing hearing ............................ 8

      2.  Sentencing hearing ......................................................... 11

III.   Standards of Review..................................................................... 17

Summary of the Argument ..................................................................... 17

Argument and Citations of Authority.....................................................19

    In Light of his Unique and Mitigating History and Characteristics, Mr. Diaz-Colon's 150-Year, Statutory Maximum Sentence is Substantively Unreasonable....................19

    A. By focusing single-mindedly on the nature of the offense, the district court failed to meaningfully consider important factors and weighed the factors unreasonably.........................21

    B. The 150-year advisory guidelines range, which is also the statutory maximum, is greater than necessary and does not adequately account for Mr. Diaz-Colon's history and characteristics..........................................................................24

Conclusion ............................................................................27

Certificate of Compliance with Type-Volume Limit...............................28

Certificate of Service ................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51 (1937) .....................21

*Pepper v. United States*, 562 U.S. 476 (2011) ...................................21, 23

*Rita v. United States*, 551 U.S. 338 (2007) .............................................25

*United States v. Bahena Martinez*, 815 F. App'x 385 (11th Cir. 2020)..23

*United States v. Crisp*, 454 F.3d 1285 (11th Cir. 2006)...........................23

*United States v. Dougherty*, 754 F.3d 1353 (11th Cir. 2014).................25

*United States v. Gonzalez*, 550 F.3d 1319 (11th Cir. 2008)...................17

*United States v. Irey,* 612 F.3d 1160 (11th Cir. 2010) .......... 12, 17, 20, 22

*United States v. Kirby*, 938 F.3d 1254 (11th Cir. 2019) .....................9, 24

*United States v. Plate*, 839 F.3d 950 (11th Cir. 2016) ...........................19

*United States v. Rosales-Bruno*, 789 F.3d 1249 (11th Cir. 2015).....25, 26

*United States v. Thomas*, 446 F.3d 1348 (11th Cir. 2006) ....................25

*Williams v. New York*, 337 U.S. 241 (1949)............................................24

**Statutes and Other Authorities**                           **Page(s)**

18 U.S.C. § 2251 ......................................................................................2

18 U.S.C. § 3231 ......................................................................................v

18 U.S.C. § 3553 ....................................................................................11

## Statutes and Other Authorities                 Page(s)

18 U.S.C. § 3553(a) ............................................................... *passim*

18 U.S.C. § 3553(a)(2) ............................................................ i, 19

28 U.S.C. § 1291 ..................................................................... v

28 U.S.C. § 1294 ..................................................................... v

U.S.S.G. § 5G1.2(d) ................................................................ 9

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This is a direct appeal from the final judgment of the United States District Court for the Middle District of Florida, Orlando Division, entered on September 3, 2020. Doc. 53. The district court had original jurisdiction under 18 U.S.C. § 3231. Mr. Diaz-Colon timely filed a notice of appeal on September 16, 2020. Doc. 57. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Whether, in light of Mr. Diaz-Colon's mitigating history and characteristics, the district court abused its discretion and imposed a substantively unreasonable sentence when it sentenced Mr. Diaz-Colon to a statutory-maximum sentence of 150 years' imprisonment for production of child pornography.

S<small>TATEMENT OF THE</small> C<small>ASE</small>

## I.    Course of Proceedings

The government indicted Appellant/Defendant Edgar Diaz-Colon on five counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). Doc. 1. He pled guilty without a plea agreement to the counts charged. Doc. 33; Doc. 64.

The district court sentenced Mr. Diaz-Colon to 1,800 months' (150 years') imprisonment, consisting of the 360-month statutory maximum for each count, to be served consecutively. Doc 53. Mr. Diaz-Colon appealed. Doc. 57. He remains incarcerated.

## II.    Statement of the Facts

### A.    Mr. Diaz-Colon's childhood: abandonment, abuse, and mental health struggles

Mr. Diaz-Colon was born in Puerto Rico in 1986. *See* Presentence Investigation Report ("PSR") ¶ 105. His parents abandoned him at three months old, and he went to live with his grandparents. *Id.* at ¶ 106. He rarely saw his father. *Id.* at ¶ 107. When he was seven years old, his father remarried and left Puerto Rico; Mr. Diaz-Colon did not see him again until he was 21 years old. *Id.* His mother remained nearby but never called or visited. *Id.* Her failure to cultivate a relationship with her

2

son was particularly painful for Mr. Diaz-Colon because she cared for and raised his siblings. *Id.* He was the only child she abandoned. *Id.*

When Mr. Diaz-Colon was five years old, his grandfather, the only father figure he knew, committed suicide. *Id.* at ¶ 108. The next year, Mr. Diaz-Colon was diagnosed with attention deficit hyperactivity disorder ("ADHD") and prescribed Ritalin, but his grandmother did not encourage him to take it regularly, eventually leading Mr. Diaz-Colon to self-medicate by procuring Adderall on the streets. *Id.* at ¶ 122; Doc. 47 at 27, 31.

When Mr. Diaz-Colon was seven years old, his older brother began sexually molesting him. PSR ¶ 109. It happened at least twice and included penetration. *Id.* Mr. Diaz-Colon did not disclose the abuse to anyone. *Id.* He believed such abuse was "normal." Doc. 47 at 27.

An adult woman took Mr. Diaz-Colon's virginity when he was 14 years old. PSR ¶ 110. At that same age, he watched child pornography for the first time. *Id.* A year later, older women began soliciting him through a website to engage in sexual acts over video camera. *Id.* At age 15, he attempted suicide. *Id.* at ¶ 123.

### B.    Mr. Diaz-Colon's adulthood:    struggles to maintain employment, the destruction of a meaningful relationship, and self-medication

Despite his untreated childhood trauma, Mr. Diaz-Colon applied himself in school. As a teenager, he volunteered for the Civil Air Patrol, a civil auxiliary of the United States Air Force that provides help in response to natural disasters and emergencies. *Id.* at ¶ 111. He received his high school diploma and a two-year degree in surgical assistance. *Id.* at ¶ 130. In 2008, he began an age-appropriate and consensual relationship with a woman named Zaira Acosta. *Id.* at ¶ 114. The two stayed together for ten years and have one child together, who is now ten years old. *Id.*[1]

For two years, Mr. Diaz-Colon worked in Puerto Rico installing hair implants. PSR ¶ 138. But he had trouble with the law, serving short sentences for misdemeanor burglary and domestic violence. PSR ¶¶ 90–94.[2] In 2010, he and Ms. Acosta moved to New York, where he found

---

[1] Mr. Diaz-Colon also has an older son, with whose mother he had only a brief encounter. He did not learn about their child until years later. PSR ¶ 113.

[2] After his arrests, Mr. Diaz-Colon left Puerto Rico; he later returned, turned himself in, and served his sentences. PSR ¶¶ 90–94; Doc. 47 at 27.

another job installing hair transplants. PSR ¶ 137. His employer let him go after only two months. *Id.* After that, he began working as a barber. *Id.* at ¶ 136. After five years at a barber shop in the Bronx, he relocated with Ms. Acosta to Florida. *Id.* at ¶¶ 114, 135–36. He continued his work as a barber. *Id.* at ¶ 135.

During this time, Mr. Diaz-Colon's relationship with Ms. Acosta began to decline. *Id.* at ¶ 114. Both had issues with infidelity, and Mr. Diaz-Colon began using drugs. *Id.* Ms. Acosta also claimed that he was abusive, though she never filed charges. *Id.* at ¶ 116. In 2018, they broke up. *Id.* at 114. The break up was devastating for Mr. Diaz-Colon. *Id.* He no longer wanted to live; his drug abuse escalated. *Id.* at ¶¶ 114, 125–28. He lost his home and lived out of his car, going days without eating or a place to sleep. *Id.* at ¶ 114.

To get back on his feet, Mr. Diaz-Colon moved for a short while to a friend's garage. *Id.* at ¶ 117. Still, he struggled, receiving new convictions for providing a false driver's license, drug possession, and driving without a license. *Id.* at ¶¶ 95–96. In 2019, he moved to Tampa, where he found employment again as a barber and began dating a new woman. *Id.* at

¶¶ 117, 133. The two lived together for several months, until law enforcement arrested him for the instant offense. *Id.* at 117.

### C.    Offense conduct and charges

In 2019, Mr. Diaz-Colon's girlfriend discovered several videos of child pornography on his iPad, including one video of her three-year old niece being sexually assaulted by him. *Id.* at ¶ 11. She looked through his other devices and located additional images and videos. *Id.* at ¶ 12. She contacted law enforcement. *Id.* After obtaining a search warrant, law enforcement identified approximately 2,500 child pornography videos on his devices and found videos in which he sexually assaulted three children. *Id.* at ¶¶ 12–14.

The first victim was his girlfriend's niece. The other two victims were the six- and seven-year old daughters of the friend with whom Mr. Diaz-Colon had stayed in 2018. *Id.* at ¶ 16. Officers conducted a forensic interview with the two sisters. *Id.* at ¶ 17. The children stated that Mr. Diaz-Colon would take them to the garage and sexually assault them through digital penetration, vaginal and anal rape, and forced oral sex. *Id.* He threatened to kill one sister if she told anyone and warned the other not to tell her parents. *Id.* The older sister said that Mr. Diaz-Colon

also spanked her with a belt, taped her mouth shut, told her she could not say the word "help," and would spank her for breaking the rule. *Id.*

The government charged Mr. Diaz-Colon with production of five videos involving the victims. The video that serves as the basis for count one was made on July 8, 2018 and is 43-seconds long; it shows him forcing the six- and seven-year old sisters to perform oral sex on him multiple times. *Id.* at ¶¶ 19–20. The video for count two was made on July 8, 2018 and is just under two minutes long; it shows Mr. Diaz-Colon instructing the seven-year-old victim to pull her clothes and underwear aside to expose her vagina, which she does several times. *Id.* at ¶¶ 21–22. The video for count three was made on July 8, 2018 and is approximately 18-seconds long; it shows the seven-year-old victim sitting on the couch, naked from the waist down, with her legs up and vagina and anus exposed. She then gets up and puts on her pants. *Id.* at ¶¶ 23–24. The video for count four was made on July 20, 2019 and is about 52-seconds long; it shows Mr. Diaz-Colon directing the six-year-old victim to pose in different positions so he can manipulate her naked vagina, which is visible in the video. *Id.* at ¶¶ 26–27. The video for count five was made on July 27, 2019 and is approximately 80 seconds long; it shows Mr. Diaz-

Colon with the three-year old victim, who is wrapped in a blanket on the couch. The video shows his hand pulling the child's underwear to the side and spreading her vagina with his fingers. *Id.* at ¶¶ 28–29.

Mr. Diaz-Colon accepted responsibility and was remorseful for his conduct. *Id.* at ¶ 32; *see* Doc. 47 at 31. He pled guilty to all five counts without a plea agreement. Doc. 33.

**D.    Sentencing**

*1.    Submissions before sentencing hearing*

The United States Probation Office ("Probation") prepared a PSR. Based on Mr. Diaz-Colon's multiple counts and enhancements not challenged on appeal, Probation calculated his total offense level as 48. *See* PSR ¶¶ 33–83. Because 43 is the maximum offense level, however, his offense level was reduced accordingly. *Id.* at ¶ 84. An offense level of 43 and the relevant criminal history category of III yields a guidelines range of life imprisonment. *Id.* at ¶ 142. Life imprisonment, however, exceeds the statutory maximum; Probation thus reduced Mr. Diaz-Colon's guidelines range to the statutory maximum of 1,800 months' imprisonment (360 months for each count, to run consecutively). *Id.*; *see*

U.S.S.G. § 5G1.2(d); *United States v. Kirby*, 938 F.3d 1254, 1257–58 (11th Cir. 2019).

The government submitted a sentencing memorandum. Doc. 45. Focusing on the nature and characteristics of the offense, Mr. Diaz-Colon's criminal history, and the need to protect the public, it requested the district court impose the 1,800-month guidelines sentence. *Id.* at 1–10.[3] Probation also recommended a sentence of 1,800 months. Doc. 47 at 42.

Mr. Diaz-Colon filed a "Mitigation Appendix." Doc. 46. Along with letters of support, photographs, and education and employment verification, he referenced an August 2020 report from a psychological evaluation by Dr. Sonia I. Ruiz ("Psychological Report"), which he had appended to the PSR. *See* Doc. 46 at 1; Doc. 47 (PSR Addendum) at 26–32.

The Psychological Report discussed Mr. Diaz-Colon's personal history, including the sexual abuse he suffered as a child. Doc. 47 at 27. It also stated that his grandmother used to hit him with "whatever she

---

[3] Later, during the sentencing hearing, the government also admitted under seal the interviews with the victims. Doc. 51.

9

had in her hand" if he misbehaved and his peers had bullied and teased him. *Id.*

The Psychological Report also focused on Mr. Diaz-Colon's mental health struggles, including his suicide attempt at age 15. *Id.* at 27. Dr. Ruiz described his later behavior—including wanting to drug himself so he would no longer live and trying "hard core" things like jumping from one building to another—as passive suicidal ideation. *Id.*

Dr. Ruiz concluded that Mr. Diaz-Colon suffered from untreated depressive disorder and ADHD, which he had tried to self-medicate with Adderall and then, progressively, other drugs. *Id.* at 30–31. His abandonment issues remained unresolved and he continued to experience symptoms of post-traumatic stress disorder ("PTSD"). *Id.* As Dr. Ruiz explained, after Mr. Diaz-Colon's first suicide attempt, his mental health continued to suffer and he attempted to self-medicate as he relieved traumatic childhood events. *Id.* at 31.

Dr. Ruiz diagnosed Mr. Diaz-Colon with major depressive disorder, polysubstance dependence, PTSD, and acute stress disorder. *Id.* at 32. She determined that he would benefit from a long-term dual diagnosis

residential program and "strongly recommended" psychiatric and psychotherapeutic intervention and substance abuse rehabilitation. *Id.*

### 2. *Sentencing hearing*

At sentencing, the district court adopted the PSR and calculated Mr. Diaz-Colon's guidelines at 1,800 months' imprisonment, which was also the statutory maximum. Doc. 67 at 13.[4] Mr. Diaz-Colon's counsel noted that the guidelines sentence was a "death sentence" and requested a downward variance to 15 years, the statutory minimum, running the sentences on each count concurrent to one another. *Id.* at 14–15. He explained that doing so would give the victims closure while also accounting for Mr. Diaz-Colon's unique history and characteristics. *Id.* at 14. Any consecutive sentence, counsel continued, would "effectively throw[ ] away the key and provid[e] him no motivation or incentive for treatment, one of the factors under 3553 that the Court should consider." *Id.* at 15; *see also id.* at 32–33.

---

[4] Mr. Diaz-Colon lodged several objections to the PSR and the guidelines calculation. *See* Doc. 67 at 5–9. The district court overruled his objections, *id.* at 12, and Mr. Diaz-Colon does not raise the issues on appeal.

Defense counsel also explained that the court should view Mr. Diaz-Colon's conduct in the context of other defendants convicted of child pornography offenses. For example, he noted that the defendant in *United States v. Irey*[5] had admitted, among other things, to traveling the world over multiple years to have sex with children, and then creating and distributing online many images of the abuse. Doc. 67 at 18. Because the government charged him with one count of production, however, his maximum exposure was only 30 years. *Id.*; *see also* Doc. 52-1 at 4–17 (document compiled by defense counsel comparing sentences).

Mr. Diaz-Colon had committed a horrific offense, too. But compared to the defendant in *Irey*, defense counsel continued, his conduct occurred over a relatively small window of time and was limited to the three children identified in the charges. Doc. 67 at 18. And, importantly, he never distributed the images, which had isolated the children's exposure. *Id.* at 19.

Defense counsel also emphasized Mr. Diaz-Colon's mental health and substance abuse issues, which stemmed from his child trauma and abandonment. *Id.* at 19. He reminded the court that Mr. Diaz-Colon had

---

[5] 612 F.3d 1160 (11th Cir. 2010) (en banc).

been abandoned by his parents, greatly impacted by his grandfather's suicide, and sexually assaulted by his older brother. *Id.* at 21–22.

Although Mr. Diaz-Colon experienced all this trauma, defense counsel continued, he never received treatment. The victims he abused had loving families and law enforcement discovered their abuse early, allowing them to receive services and support. *Id.* at 24. But Mr. Diaz-Colon never had that opportunity. *Id.* Defense counsel cited multiple studies explaining that children who are victims of sexual abuse are more likely to commit similar crimes in adulthood, especially when the sexual abuse is coupled with neglect and a cold emotional atmosphere, like Mr. Diaz-Colon's childhood. *See id.* at 24–28; Doc. 52-1 at 11–13, 16, Doc. 52-2 at 14–69; Doc. 52-3.

Defense counsel noted that this "perfect storm" led to Mr. Diaz-Colon's difficulties in relationships, illicit drug use, suicide attempt, and offense conduct. Doc. 67 at 29. Based on this history and the fact that Mr. Diaz-Colon had never had a chance to receive treatment, defense counsel argued that the mandatory minimum of 15 years' imprisonment, to be served concurrently, followed by 15 years' supervised release and sex-offender registration, was sufficient, but not greater than necessary, to

deter similar conduct by others. Defense counsel argued that this sentence would also protect the public by ensuring that Mr. Diaz-Colon had time to receive proper treatment while incarcerated and that the victims would be adults when he was released. *Id.* at 31–32.

After defense counsel finished, the government called FBI Special Agent Kevin Kauffman, who had investigated Mr. Diaz-Colon. *Id.* at 34. Agent Kaufman discussed the videos and images on Mr. Diaz-Colon's devices. The agent also discussed the interviews with the victims and how Mr. Diaz-Colon had sexually and physically assaulted the three children. *Id.* at 34–41.

Next, Mr. Diaz-Colon allocuted through an interpreter. *Id.* at 46. He apologized and explained that he had spent his time in jail thinking about his wrong actions and the consequences of his behavior. *Id.*

After Mr. Diaz-Colon spoke, the father of the sibling victims gave an unsworn statement. *Id.* at 47. He explained that he had trusted Mr. Diaz-Colon as a friend and coworker and invited him into his home. *Id.* But Mr. Diaz-Colon had taken advantage of his kindness: dismantling his motorcycle, destroying his credit, and using drugs. *Id.* at 48. A year later, after Mr. Diaz-Colon had moved out, the father continued, he

learned Mr. Diaz-Colon had been abusing his two young children. *Id.* The

father explained that Mr. Diaz-Colon has scarred his daughters forever.

*Id.* at 50. The father quit his job to avoid memories of Mr. Diaz-Colon and

placed his children in homeschool. *Id.* He concluded that he would leave

the decision-making to the court but that, if the decision were his, Mr.

Diaz-Colon would never walk free again. *Id.* at 51.

The government then reiterated its request for a 1,800-month

sentence. *Id.* at 51. It argued that Mr. Diaz-Colon's offense conduct,

history and characteristics, and the other § 3553(a) factors supported the

sentence. *Id.* at 51–52; *see id.* at 52–55. The government dismissed Dr.

Ruiz's Psychological Report as based on "incomplete facts" because, even

though she had reviewed the indictment and Mr. Diaz-Colon's personal

history, no one had provided her with the victim interviews or the FBI's

case materials. *Id.* at 56. And the government argued that Mr. Diaz-

Colon's history of sexual abuse was aggravating, rather than mitigating.

*Id.* at 57. In sum, the government argued, 1,800 months' imprisonment

was sufficient, but not greater than necessary, to serve the statutory

sentencing factors. *Id.* at 59.

After some additional argument by both parties, the court proceeded to pronounce the sentence. The court acknowledged that Mr. Diaz-Colon had "significant mitigation in his past based on how he was victimized." *Id.* at 66–67. The court continued, however, by criticizing Mr. Diaz-Colon for "angrily glaring" and stated it was "all [the court] saw for the first half of the hearing." *Id.* at 67. It also noted that Mr. Diaz-Colon appeared stoic and did not have a visible reaction when Agent Kauffman testified. *Id.* After making these remarks, the court stated its observation would not weigh "heavily" in its decision. *Id.*

The court then explained its belief that Mr. Diaz-Colon was a "monster" and that he was dangerous because of the "cruelty" he had shown the children. *Id.* at 68. The court acknowledged that by imposing a consecutive sentence it was "abandoning any chance of him ever being rehabilitated" and "making the decision that as a person [the court was] giving up on him." *Id.* But it nevertheless believed doing so was appropriate because it thought Mr. Diaz-Colon would always be a danger and because the three children he abused also had received "life sentences." *Id.* at 69.

16

The district court sentenced Mr. Diaz-Colon to 1,800 months' imprisonment—the statutory maximum of 360 months for each count, to be served consecutively—followed by a five-year term of supervised of release. *Id.* at 69–70. Defense counsel objected to the substantive and procedural reasonableness of the sentence. *Id.* at 74. This appeal followed.

## III.   Standards of Review

This Court reviews the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). The review "involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

### SUMMARY OF THE ARGUMENT

The district court abused its discretion and imposed a substantively unreasonable sentence because it failed to reasonably weigh the 18 U.S.C. § 3553(a) factors or sufficiently consider factors due significant weight. Although the court properly considered the severity of Mr. Diaz-Colon's offense and its corresponding concern that he was dangerous, the

court's single-minded focus on that issue to the detriment of other proper factors was unreasonable. Specifically, the court failed to give due weight to Mr. Diaz-Colon's significant mitigation, including his untreated childhood trauma—parental abandonment, sexual abuse, and suicide—and mental health issues.

To be clear, Mr. Diaz-Colon's offense was extremely serious and the district court properly considered the severity of his conduct and its impact on his victims. But the court had to balance *all* the factors reasonably. It failed to do so here. The resulting 150-year, statutory-maximum sentence, although within the advisory guidelines, is greater than necessary to satisfy the relevant statutory sentencing purposes. This Court should vacate Mr. Diaz-Colon's sentence and remand for resentencing.

## ARGUMENT AND CITATIONS OF AUTHORITY

### In Light of his Unique and Mitigating History and Characteristics, Mr. Diaz-Colon's 150-Year, Statutory Maximum Sentence Is Substantively Unreasonable.

District courts must impose sentences that are sufficient—but not greater than necessary—to comply with the factors and purposes set forth in 18 U.S.C. § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public, and provide the defendant with needed educational, medical, and other correctional treatments. *See United States v. Plate*, 839 F.3d 950, 957 (11th Cir. 2016).

District courts must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution. *See id.*; 18 U.S.C. § 3553(a).

Although district courts have considerable discretion in applying these factors and imposing a sentence, a district court abuses that

discretion when it: (1) fails to consider relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors. *Irey*, 612 F.3d at 1189. "As for the third way that discretion can be abused, a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably . . . ., arriving at a sentence that does not achieve the purposes of sentencing as stated in § 3553(a)." *Id.* (internal quotation marks omitted).

In reviewing the reasonableness of the sentence, this Court "can and should consider additional salient facts that were elicited, and uncontroverted." *Id.* at 1190 (internal quotation marks omitted). "A district court cannot write out of the record undisputed facts by simply ignoring them. *Id.*; *see id.* ("[T]he importance of facts in light of the § 3553(a) factors is not itself a question of fact but instead is an issue of law."). This Court will vacate a district court's sentence if it is left with a definite and firm conviction that the district court committed a clear error of judgment in weighing the factors. *Id.*

20

**A.    By focusing single-mindedly on the nature of the offense, the district court failed to meaningfully consider important factors and weighed the factors unreasonably.**

The district court abused its discretion by failing to meaningfully consider Mr. Diaz-Colon's important mitigating characteristics and by weighing the sentencing factors unreasonably. As the Supreme Court has explained, "justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)).

Mr. Diaz-Colon presented uncontroverted evidence of his "character and propensities," which included a traumatic childhood and untreated mental health problems. By the age of fifteen, Mr. Diaz-Colon had been abandoned by his parents, forced to deal with the suicide of his only father-figure, sexually abused by his brother and older women, and had attempted suicide. *See* PSR at ¶¶ 105–23. Other than his dangerous and destructive efforts at self-medication, Mr. Diaz-Colon had received no treatment addressing his trauma and mental health issues. Treatment,

21

for Mr. Diaz-Colon, could help lower his recidivism risk: After a thorough examination, Dr. Ruiz concluded that Mr. Diaz-Colon could benefit from treatment and "strongly recommended" he have a chance to do so. Doc. 47 at 32.[6]

The district court acknowledged that Mr. Diaz-Colon had been victimized and had significant mitigation. Doc. 67 at 67. Yet the court imposed a statutory-maximum, consecutive sentence of 1,800 months—a guidelines sentence that did not account for his mitigation, *see Part B., infra*—and in doing so focused only on the nature of the offense. But the district court cannot write out of the record Mr. Diaz-Colon's mitigating history and characteristics, and this Court must consider that mitigation's significance. *See Irey*, 612 F.3d at 1190.

To be clear, the district court properly considered the seriousness of Mr. Diaz-Colon's offense, including the impact of his conduct on the three young victims. But the court's emphasis on this factor (and its

---

[6] At sentencing, the government dismissed Dr. Ruiz's Psychological Report because she had not reviewed the case file or forensic interviews with the victims, which shed additional light on the nature of the offense and severity of his conduct. Doc. 67 at 56. But the government did not dispute that Dr. Ruiz reviewed the materials necessary to evaluate Mr. Diaz-Colon's background and mental health, which are the critical points regarding his mitigating history and characteristics.

corresponding concern that Mr. Diaz-Colon was "dangerous," *see* Doc. 67 at 68) unreasonably eclipsed its consideration of other significant sentencing factors, including Mr. Diaz-Colon's mitigating history and characteristics. *See id.*; *see also United States v. Bahena Martinez*, 815 F. App'x 385, 387 (11th Cir. 2020) (explaining that court's "'single-minded' focus on one factor to the detriment of other relevant sentencing factors," such as defendant's history and characteristics, "'is a symptom of an unreasonable sentence'" (quoting *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006)) (alterations adopted)).[7]

The court's failure to reasonably weigh these relevant factors, which were due significant weight, was a clear error of judgment. As a result, the court fashioned a sentence that fails to reflect Mr. Diaz-Colon's unique and mitigating circumstances, violating "the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper*,

---

[7] To the extent that the district court's comments on Mr. Diaz-Colon's facial expressions suggest that he lacked remorse, Doc. 67 at 67, the undisputed PSR and Psychological Report belie that conclusion, s*ee* PSR at ¶ 32; Doc. 47 at 31. While the district court apparently focused on Mr. Diaz-Colon's facial expressions, Mr. Diaz-Colon was listening, via interpreter, to the most traumatic and shameful moments of his life. *Compare* Doc. 67 at 67 (district court stating that "all [it] saw during first half of hearing" was Mr. Diaz-Colon's "angry[] glar[e]"), *with id.* at 1–34 (defense counsel's sentencing presentation).

562 U.S. at 487–88 (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

### B. The 150-year advisory guidelines range, which is also the statutory maximum, is greater than necessary and does not adequately account for Mr. Diaz-Colon's history and characteristics.

The district court's focus on the nature of the offense—to the detriment of other important sentencing factors—led the court to impose a 150-year sentence, which is greater than necessary to satisfy the statutory purposes of sentencing. As a legal fiction, any sentence of "years" is considered less than the indefinite incarceration of a life sentence. *See Kirby*, 938 F.3d at 1257–58. But as a practical matter, a sentence of fewer than 150 years unquestionably would exceed Mr. Diaz-Colon's life expectancy, equally serving the goals of protecting the public, deterrence, and the other relevant sentencing factors. Why then is a sentence of 60, 90, or 120 years not sufficient to satisfy the statutory purposes of sentencing?

Indeed, 150 years is the statutory-maximum sentence, another signal that the sentence is unreasonable. This Court has repeatedly upheld sentences as reasonable because they are below the statutory maximum. *See, e.g.*, *United States v. Dougherty*, 754 F.3d 1353, 1362

(11th Cir. 2014) ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence."); *United States v. Thomas*, 446 F.3d 1348, 1357 (11th Cir. 2006) (citing cases). A statutory maximum sentence, by contrast, is reasonable only for the most culpable of offenders—not those, like Mr. Diaz-Colon, who have significant mitigating history and characteristics.

To be fair, 150 years' imprisonment was also Mr. Diaz-Colon's advisory guidelines range. But a district court may not presume that a guidelines sentence is reasonable. *See Rita v. United States*, 551 U.S. 338, 350 (2007). Instead, the guidelines range is just one of many factors the court must consider when deciding on a sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1259 (11th Cir. 2015). Thus, "[i]n assigning weight to the § 3553(a) factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts." *Id.* at 1260. This individualized consideration is necessary because, as the Supreme Court has recognized, sometimes a

25

guidelines sentence "fails properly to reflect § 3553(a) considerations." *Rita*, 551 U.S. at 351.

The guidelines sentence here is one that "fails properly to reflect the § 3553(a) considerations." *Id.* The guidelines range does not account for Mr. Diaz-Colon's unique, mitigating history and circumstances or his need for—and ability to benefit from—medical care and treatment. In light of these "individualized, particularized, specific facts," *Rosales-Bruno*, 789 F.3d at 1260, the 150-year sentence is greater than necessary to achieve the purposes of sentencing. Accordingly, this Court should vacate Mr. Diaz-Colon's substantively unreasonable sentence and remand for resentencing.

CONCLUSION

For the reasons explained above, Mr. Diaz-Colon requests that this

Court vacate his sentence and remand for resentencing.


Respectfully submitted,

James T. Skuthan
Acting Federal Defender

*/s/ Katherine Howard*
Katherine Howard
Research and Writing Attorney
Appellate Division
NY Atty. Reg. No. 5624275
201 South Orange Avenue, Suite 300
Orlando, Florida 32801
Telephone 407-648-6338
E-mail: katherine_howard@fd.org

27

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

In accordance with Fed. R. App. P. 32(g)(1), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 4,913 words according to Microsoft Word's word count, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

*/s/ Katherine Howard*
Katherine Howard
Research and Writing Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of February, 2021, a true copy of the foregoing *Initial Brief of Appellant* was filed using the Court's Electronic Case Filing system, which will send notification to Todd B. Grandy, Assistant United States Attorney.

*/s/ Katherine Howard*
Katherine Howard
Research and Writing Attorney