## No. 20-13494-CC

In the

# United States Court of Appeals
# for the Eleventh Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

EDGAR JOHAN DIAZ-COLON,

*Defendant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 6:19-CR-260-CEM-DCI-1

---

## BRIEF OF THE UNITED STATES

---

KARIN HOPPMANN
Acting United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

TODD B. GRANDY
Assistant United States Attorney
Appellate Division
Florida Bar No. 992674
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
April 30, 2021                                (813) 274-6132

*United States v. Edgar Johan Diaz-Colon*
No. 20-13494-CC

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons identified in the Certificate of Interested

Persons and Corporate Disclosure Statement in Edgar Johan Diaz-Colon's

principal brief, the following persons have an interest in the outcome of this

case:

1.    Hoppmann, Karin, Acting United States Attorney; and

2.    Sholl, Peter J., Assistant United States Attorney.

No publicly traded entity has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement......... C-1

Statement Regarding Oral Argument ................................................................. i

Table of Contents ............................................................................................... ii

Table of Citations .............................................................................................. iv

Statement of Jurisdiction ................................................................................... vi

Statement of the Issues ....................................................................................... 1

Statement of the Case ......................................................................................... 1

    *Course of Proceedings* ..................................................................................... 1

    *Statement of the Facts* ..................................................................................... 2

        A.    Diaz-Colon's Offense Conduct .......................................................... 2

        B.    Diaz-Colon's Sentencing Proceedings ............................................... 4

            (1)    *The United States' Sentencing Memorandum* .................. 4

            (2)    *Diaz-Colon's "Mitigation Appendix"* ............................ 7

            (3)    *Diaz-Colon's Presentence Investigation Report* ................ 8

            (4)    *The Sentencing Hearing* ................................................. 9

    *Standard of Review* ......................................................................................... 12

Summary of the Argument ................................................................................. 13

Argument and Citations of Authority ............................................................... 14

In light of Diaz-Colon's heinous offenses and other relevant
conduct, the district court did not abuse its discretion by imposing
a 150-year, guidelines-range sentence..................................................... 14

    A.    Pertinent Legal Standards ................................................ 14

    B.    Application Here ............................................................ 15

Conclusion.................................................................................................... 23

Certificate of Service

# Table of Citations

## Cases

*Gall v. United States,*
    552 U.S. 38 (2007) ........................................................................ 12, 14–15

*United States v. Amedeo,*
    487 F.3d 823 (11th Cir. 2007) .................................................................. 15

*\*United States v. Gomez,*
    955 F.3d 1250 (11th Cir. 2020) ................................................................ 20

*United States v. Graziotti,*
    619 F. App'x 980 (11th Cir. 2015) .......................................................... 22

*United States v. Harding,*
    696 F. App'x 955 (11th Cir. 2017) .......................................................... 22

*United States v. Irey,*
    612 F.3d 1160 (11th Cir. 2010) (en banc) ........................................ 9, 11, 21

*\*United States v. Isaac,*
    987 F.3d 980 (11th Cir. 2021) ............................................................. 15, 21

*United States v. Johnson,*
    451 F.3d 1239 (11th Cir. 2006) ........................................................... 18, 21

*\*United States v. Kirby,*
    938 F.3d 1254 (11th Cir. 2019) ................................................. 8, 13, 15, 21

*United States v. Pugh,*
    515 F.3d 1179 (11th Cir. 2008) ................................................................ 20

*\*United States v. Sarras,*
    575 F.3d 1191 (11th Cir. 2009) ..................................................... 14–15, 21

*United States v. Stevens,*
    731 F. App'x 943 (11th Cir. 2018) ...................................................... 21–22

*United States v. Trader,*
  981 F.3d 961 (11th Cir. 2020)....................................................... 18, 20–21

*United States v. Wade,*
  458 F.3d 1273 (11th Cir. 2006) ................................................................ 2

**Statutes**

18 U.S.C. § 2251(a) ............................................................................... 2

18 U.S.C. § 2251(e) ........................................................................ 8, 11

18 U.S.C. § 3231 .................................................................................. vi

18 U.S.C. § 3553(a) ............................................................. 13–15, 20

18 U.S.C. § 3553(a)(1) ...................................................................... 18

18 U.S.C. § 3553(a)(2)(A–C)............................................................ 18

18 U.S.C. § 3742(a) ............................................................................ vi

28 U.S.C. § 1291 ................................................................................ vi

**Rules**

Fed. R. App. P. 4(b)(1)(A)(i)............................................................ vi

**Other Authorities**

USSG Ch.5, Pt.A ................................................................................ 8

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered the judgment against Edgar Johan Diaz-Colon on September 3, 2020, Doc. 53, and he timely filed a notice of appeal on September 16, 2020, Doc. 57. *See* Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction over this appeal, *see* 28 U.S.C. § 1291, and authority to examine Diaz-Colon's challenge to the substantive reasonableness of his guidelines-range sentence, *see* 18 U.S.C. § 3742(a).

## Statement of the Issue

Whether the district court abused its discretion by determining that Diaz-Colon's egregious offenses and other relevant conduct in this case warranted a 150-year, guidelines-range sentence.

## Statement of the Case

Diaz-Colon is an opportunistic predator who exploited personal relationships to gain access to vulnerable young children that he then physically and sexually abused on multiple occasions. His abuse knew few bounds and included anal and vaginal rape, forced oral sex, and digital penetration. Diaz-Colon's victims ranged in age from three to seven years old, and two of his victims were sisters who were forced to witness each other's darkest moments, powerless to stop it. Diaz-Colon also amassed a large collection of particularly disturbing child pornography, which featured bestiality, bondage, and a wide range of other sex acts, and involved children as young as infants. Despite his egregious offenses and other relevant conduct, Diaz-Colon now argues that his 150-year, guidelines-range sentence is too long.

### *Course of Proceedings*

In December 2019, a grand jury in Middle District of Florida charged Diaz-Colon with five counts of having coerced a minor child to engage in

1

sexually explicit conduct in order to produce child pornography, in violation of 18 U.S.C. § 2251(a). Doc. 1 at 1–4. Approximately four months later, he pleaded guilty to these offenses. Doc. 33. During the sentencing hearing that followed (which will be discussed in further detail below), the district court imposed a guidelines-range sentence of 150 years' imprisonment, consisting of five consecutive 30-year terms. Doc. 67 at 69; *see also* Doc. 53 at 2. Diaz-Colon then filed this direct appeal. *See* Doc. 57.

### Statement of the Facts

### A.    Diaz-Colon's Offense Conduct[1]

The investigation in this child-exploitation case arose after Q.W., a friend with whom Diaz-Colon had resided for approximately a month during the spring of 2019, told local authorities at the Pasco County Sheriff's Office ("PCSO") that she had discovered child pornography on Diaz-Colon's iPad,

---

[1]Other than aspects of paragraph 17, *see* Doc. 67 at 9, Diaz-Colon did not object to the facts contained in his Presentence Investigation Report. Consequently, he is deemed to have admitted these undisputed facts. *See, e.g., United States v. Wade,* 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a [PSR] admits those facts for sentencing purposes."). Moreover, the disputed aspects of paragraph 17 (which concerned the nature and extent of Diaz-Colon's sexual abuse of two of his minor victims) were ultimately confirmed by the victims' forensic interviews, which were filed under seal as exhibits to the United States' sentencing memorandum, *see* Doc. 45 at 3 n.2, and also admitted into evidence during Diaz-Colon's sentencing hearing, *see* Doc. 67 at 11; *see also* Doc. 51 (exhibit list).

including a video of Diaz-Colon sexually assaulting her three-year-old niece ("child-victim 1"). Presentence Investigation Report ("PSR") ¶¶ 11–12. She also gave them the iPad. PSR ¶ 12. Two days later, Q.W. again contacted PCSO and reported that she had discovered additional images and videos of child pornography in other electronic devices that Diaz-Colon had left at her residence. *Id*. Officers with PCSO then retrieved those devices and obtained a search warrant to examine their contents. *Id.* During the forensic examinations that followed, PCSO recovered approximately 2,500 videos of child pornography from Diaz-Colon's cellphone and several others from his laptop computer. PSR ¶ 13.

Authorities soon learned that Diaz-Colon had also sexually assaulted two minor daughters of another friend, J.O., who explained that he had allowed Diaz-Colon to reside in a music studio that J.O. had built in his garage for approximately six months in 2018 because Diaz-Colon was having financial difficulties. PSR ¶¶ 15–16. J.O. also gave Diaz-Colon a key to the home so that he would have access to bathroom facilities. PSR ¶ 16. While residing at this residence, Diaz-Colon sexually assaulted J.O.'s two daughters—who were only six ("child-victim 3") and seven ("child-victim 2") years old at the time—on multiple occasions. *Id.*

On July 8, 2018, Diaz-Colon produced the pornographic videos that

3

provided the basis for counts one through three of his indictment. PSR ¶¶ 19,

21, 23. In the first video, Diaz-Colon forces child-victims 2 and 3 to perform

oral sex on him multiple times, PSR ¶ 20, while the second video shows him

directing child-victim 2 to spread her legs and expose her vagina, PSR ¶ 22.

And in the third video, child-victim 2 is sitting on a couch, while naked from

the waist down in a manner that exposed her vagina and anus. PSR ¶ 24.

Approximately a year later, Diaz-Colon produced the pornographic

videos that provided the basis for counts four and five of his indictment. PSR

¶¶ 26, 28. In the first video, he directs child-victim 3 to pose in different

positions while displaying her vagina, PSR ¶ 27, and the second video shows

him pulling child-victim 1's underwear to the side and spreading her vagina

with his fingers, PSR ¶ 29.

## B.    Diaz-Colon's Sentencing Proceedings

### (1)    The United States' Sentencing Memorandum

Before Diaz-Colon's sentencing hearing, the prosecutor filed a

sentencing memorandum that was supported by forensic interviews of child-

victims 2 and 3 (who, again, were seven and six years old, respectively, PSR

¶ 16), detailing Diaz-Colon's extensive sexual abuse of the children, *see* Exs.

1A, 2A (sealed video interviews), 1B, 2B (sealed transcripts). *See* Doc. 45 at 3

n.2. The memorandum also was supported by a state report memorializing an

interview of child-victim 1 that was damning but, given the child's young age, not as graphic (as noted, she was only three years old, PSR ¶ 29), *see* Ex. 3 (sealed). *See* Doc. 45 at 6 n.3. In this memorandum, the prosecutor summarized the contents of the pornographic videos that provided the basis for Diaz-Colon's five child-exploitation convictions. *Id.* at 2–3, 5. She also discussed pertinent aspects of the interviews of the three young girls that Diaz-Colon had victimized, *id.* at 3–5:

Child-victim 2 reported that Diaz-Colon had repeatedly forced her to perform oral sex on him and had ejaculated in her mouth. Doc. 45 at 3. He also anally and vaginally raped the child multiple times, causing her excruciating pain. *Id.* at 3–4. While inflicting his abuse, Diaz-Colon demanded that child-victim 2 remain quiet, and, if she cried out for help, he responded by telling her to shut up, spanking her (at times with a belt), or taping her mouth shut. *Id.* at 4. He also told the girl that he would kill her if she told her family about his abuse. *Id.*

At one point, Diaz-Colon showed child-victim 2 a video of himself raping a child who appeared to be about three years old and, when she questioned what he had done, Diaz-Colon responded: "'I don't care. She deserved it.'" Doc. 45 at 4 (quoting Ex. 1B at 24). Child-victim 2 also was present when Diaz-Colon raped her six-year-old sister (child-victim 3), and he

ignored child-victim 2's pleas to stop abusing her sister. *Id.* at 4.

Turning to child-victim 3, the prosecutor explained that the girl had confirmed that Diaz-Colon had anally raped her and had forced her to perform oral sex on him. Doc. 45 at 5. The girl also said that he had digitally penetrated her vagina, had beaten her, and had told her not to tell her parents about the abuse. *Id.* The prosecutor then discussed the interview of child-victim 1, who was still three years old, and who said that Diaz-Colon had touched and kissed her buttocks. *Id.* at 6. She also said that he had kissed her vaginal area and had repeatedly hit her. *Id.*

The prosecutor next pointed out that authorities had recovered a large cache of particularly disturbing child pornography from Diaz-Colon's electronic media, which featured bestiality, bondage, and other sex acts, and depicted the sexual abuse of children as young as infants. Doc. 45 at 7. She also highlighted three of these videos showing: (1) an adult male performing oral, vaginal, and anal sex on a girl who was approximately two or three years old, (2) two adult males pinning down a naked girl who was approximately four or five years old while one of the men forced the girl to perform oral sex as she gagged and struggled, and (3) an adult male forcibly raping a girl who was approximately two or three years old. *Id.* at 7–8. The prosecutor therefore argued that Diaz-Colon's large collection of graphic child pornography,

6

coupled with his heinous offenses and other relevant conduct in this case, demonstrated the extent of his depravity, and established the need for a weighty sentence. *Id.* at 8.

Finally, the prosecutor argued that a guidelines-range sentence of 150 years' imprisonment would provide just punishment for Diaz-Colon's egregious offenses and other relevant conduct, deter others from sexually exploiting children, promote respect for the law that has obviously been lacking, and, in the meantime, protect the public from Diaz-Colon's predatory behavior. Doc. 45 at 9–10.

### (2)    Diaz-Colon's "Mitigation Appendix"

Diaz-Colon, in turn, filed what he characterized as a "mitigation appendix," which contained supportive letters, childhood photographs, and verification of his education and prior employment. Doc. 46 at 2–23. The appendix also referred to a consulting psychologist's report that had been attached to Diaz-Colon's PSR, *see id.* at 1, which discussed his employment history; his difficult childhood, during which he was sexually abused by an older brother twice and attempted suicide as a teenager; his history of drug use; and his lifelong mental-health struggles, PSR at 27–32.[2] Notwithstanding Diaz-

---

[2]Pinpoint citations to the report in this brief refer to the pagination banner that was added upon filing in the district court.

Colon's egregious offenses and other relevant conduct in this case, the

psychologist who prepared this report opined that he possessed no "deviant

sexual interests, pro-offending attitudes[,] or self-management issues," but she

nonetheless concluded that he would benefit from "psychiatric and

psychotherapeutic intervention, as well as substance abuse rehabilitation." *Id.*

at 31–32.

### (3)    *Diaz-Colon's Presentence Investigation Report*

In Diaz-Colon's PSR, the probation office recommended that his total

offense level be established at 43 and his criminal history category at III, PSR

¶¶ 84, 97, which yielded an initial guidelines sentence of life imprisonment, *see*

USSG Ch.5, Pt.A (Sentencing Table). But because the aggregate statutory-

maximum penalty for Diaz-Colon's five child-exploitation convictions was 150

years' imprisonment, *see* 18 U.S.C. § 2251(e) (30 years per conviction), that

became his applicable guidelines-range sentence, PSR ¶ 142; *see also United

States v. Kirby,* 938 F.3d 1254, 1257–58 (11th Cir. 2019) (explaining that

aggregate statutory-maximum penalties provide "the closest available

sentence" for a defendant whose guidelines-range sentence would otherwise be

life imprisonment).

Diaz-Colon's PSR also addressed his difficult childhood, explaining that

he had grown up in a broken family, had lost his grandfather to suicide when

8

he was only five, had been molested by an older brother two times a few years later, and had attempted to commit suicide when he was teenager. PSR ¶¶ 106–09, 123.

### (4)    *The Sentencing Hearing*

During Diaz-Colon's sentencing hearing, after resolving objections that have no bearing on this appeal, the district court adopted the probation office's proposed guidelines calculations and resulting guidelines-range sentence of 150 years' imprisonment. Doc. 67 at 12–13. The court then invited Diaz-Colon's counsel to argue in mitigation. *Id.* at 13.

Based largely on this Court's decision in *United States v. Irey,* 612 F.3d 1160, 1222 (11th Cir. 2010) (en banc)—another horrible child-exploitation case in which this Court had ultimately determined that nothing less than "the maximum allowable" sentence of 30 years' imprisonment would be reasonable—Diaz-Colon's counsel urged the district court to sentence Diaz-Colon to the statutory-minimum penalty for his child-exploitation offenses: 15 years' imprisonment on each count, the terms to be served concurrently. Doc. 67 at 14–18, 31–34, 63. He also maintained that Diaz-Colon was "very remorseful" and characterized Diaz-Colon's offense conduct as "isolated" incidents that occurred during "a small window of time." *Id.* at 18, 32. And he pointed out that the record contained no evidence that Diaz-Colon had

9

distributed any of the child pornography that he had produced. *Id.* at 19, 32.

Next, Diaz-Colon's counsel emphasized his client's sexual abuse as a child and otherwise difficult childhood; letters of support in the mitigation appendix; the opinion of Diaz-Colon's consulting psychologist that, with appropriate treatment, Diaz-Colon was unlikely to reoffend; and materials addressing the often profound effects of childhood abuse on victims, especially in the absence of appropriate mental-health treatment. Doc. 67 at 19–29.

The district court then heard testimony from the United States' case agent, who summarized the contents of the statements that child-victims 1, 2, and 3 had made. Doc. 67 at 36–40. He also discussed the large cache of particularly disturbing child pornography that authorities had recovered from Diaz-Colon's electronic devices, and he confirmed that the prosecutor had accurately described that child pornography in her sentencing memorandum. *Id.* at 40–41. Diaz-Colon then briefly allocuted, during which he expressed regret for his actions. *Id.* at 46.

The district court next heard impassioned testimony from the father of child-victims 2 and 3, who discussed the emotional and other devastation that Diaz-Colon—formerly a trusted friend for years—had caused his family. Doc. 67 at 47–51. At that point, the prosecutor argued that Diaz-Colon's egregious offenses and other relevant conduct in this case warranted a guidelines-range

10

sentence of 150 years' imprisonment. *Id.* 51–55. She also disputed the comparatively benign assessment of Diaz-Colon's consulting psychologist, as that opinion had failed to take into account Diaz-Colon's PSR, the damning victim statements in this case, or Diaz-Colon's demonstrated interest in particularly disturbing child pornography. *Id.* at 55–57; *see also* PSR at 26 (identifying background materials psychologist considered in connection with Diaz-Colon's mental-health assessment). The prosecutor therefore argued that he remained a serious danger to the community. Doc. 67 at 57–58. And she distinguished the *Irey* decision, because the defendant in that case had been convicted of only *one* child-enticement offense and, therefore, was subject to a statutory-maximum sentence of 30 years' imprisonment. *Id.* at 58; *see* 18 U.S.C. § 2251(e).

After taking a brief recess, and allowing additional argument from the parties, the district court agreed that Diaz-Colon had "significant mitigation in his past based on how he was victimized" but observed that he had displayed no discernible emotion when the United States' case agent had described "the horrific things" that Diaz-Colon had done to child-victims 1, 2, and 3. Doc. 67 at 66–67. The court also concluded, based on the "level of cruelty" his "unspeakable" actions reflected, that Diaz-Colon is "a monster" who remained a danger to the community. *Id.* at 68–69. The court then added: "I don't want

11

to minimize the fact that the defense did an outstanding job of giving me a complete background of where he's at and who he is. But who he is is a monster. And he's … a dangerous person." *Id.* at 68. The court also expressed its view that Diaz-Colon was unlikely to change. *Id.* at 69.

Next, the district court acknowledged the significance of the sentence the prosecutor had proposed: "I understand the magnitude of what the Government is asking, and I don't take this lightly." Doc. 67 at 68. The court also acknowledged that "[a] consecutive sentence means that I'm abandoning any chance of his ever being rehabilitated" but confirmed that "it's a heavy decision I don't take lightly." *Id.* And the court reiterated that the extent of Diaz-Colon's cruelty in this case, and the devastation it had inflicted on his vulnerable young victims, "stands out." *Id.* at 69. At that point, the court sentenced Diaz-Colon to 150 years' imprisonment, which the court concluded was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." *Id.* at 69, 74.

### Standard of Review

This Court should review the substantive reasonableness of Diaz-Colon's 150-year, guidelines-range sentence only for an abuse of discretion. *See Gall v. United States,* 552 U.S. 38, 41 (2007). But this Court will reverse for abuse of discretion only if it is "'left with the definite and firm conviction that the

12

district court committed a clear error of judgment in weighing the [18 U.S.C. §]

3553(a) factors by arriving at a sentence that lies outside the range of

reasonable sentences dictated by the facts of the case.'" *United States v. Kirby,*

938 F.3d 1254, 1257 (11th Cir. 2019) (citation omitted). As a result,

"[s]ubstantively unreasonable sentences are 'rare.'" *Id.* at 1259 (citation

omitted).

## Summary of the Argument

Diaz-Colon is a predator who exploited personal relationships to gain

access to vulnerable young children that he then abused. The parade of

horribles to which he subjected these children—who ranged in age from three

to seven years old—included anal and vaginal rape, forced oral sex, digital

penetration, and other forms of physical and emotional abuse. And he

memorialized some of his exploits by producing sexually explicit videos of the

children. Diaz-Colon also had a voracious appetite for particularly disturbing

child pornography—his vast collection featured bestiality, bondage, and other

sex acts, and it depicted the sexual abuse of children as young as infants. In

short, this case involves an extraordinary level of depravity that warranted a

sentence effectively amounting to life imprisonment. Diaz-Colon's 150-year,

guidelines-range sentence accomplishes that objective. Though severe, the

sentence is not substantively unreasonable.

## Argument and Citations of Authority

### In light of Diaz-Colon's heinous offenses and other relevant conduct, the district court did not abuse its discretion by imposing a 150-year, guidelines-range sentence.

On appeal, Diaz-Colon argues that his 150-year, guidelines-range sentence is substantively unreasonable. *See* Diaz-Colon's brief at 19–27. Specifically, he maintains that the district court failed to give due weight to "mitigating characteristics" in his background and, instead, focused exclusively on his egregious offenses and other relevant conduct in this case. *See id.* at 21–24. Failing that, Diaz-Colon also argues that his sentence is simply too long. *See id.* at 24–26. The record, however, indicates otherwise.

### A.    Pertinent Legal Standards

As previously explained, this Court reviews a sentence for substantive reasonableness under an abuse-of-discretion standard, with the defendant bearing the burden to show that his sentence is unreasonable. *See, e.g., Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Sarras,* 575 F.3d 1191, 1219 (11th Cir. 2009). "A sentence may be substantively unreasonable if a district court unjustifiably relied on any one [18 U.S.C.] § 3553(a) factor, failed to consider pertinent § 3553(a) factors, selected the sentence arbitrarily, or based the sentence on impermissible factors." *Sarras,* 575 F.3d at 1219.

"'The weight to be accorded any given § 3553(a) factor is a matter

14

committed to the sound discretion of the district court.'" *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007) (citation omitted). Moreover, "that [this Court] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. Instead, this Court will vacate a sentence only if it is "'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C. §] 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Kirby,* 938 F.3d 1254, 1257 (11th Cir. 2019) (citation omitted). As a result, "[s]ubstantively unreasonable sentence are 'rare.'" *Id.* at 1259 (citation omitted). Finally, this Court ordinarily expects a sentence within a defendant's applicable guidelines range to be reasonable. *See, e.g., United States v. Isaac,* 987 F.3d 980, 994 (11th Cir. 2021). And "[t]hat is especially true here," since "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable." *Sarras,* 575 F.3d at 1220 (collecting cases).

**B.    Application Here**

    As the United States explained in the court below, Doc. 45 at 3, the pornographic videos that provided the basis for Diaz-Colon's five child-

15

exploitation convictions—while certainly graphic and disturbing—fall far short of capturing the true nature and extent of the savage abuse for which he should be held accountable in this case. But the record also contains forensic interviews of his three minor victims, and those interviews detail the parade of horribles that Diaz-Colon callously inflicted on these vulnerable young children:[3]

Child-victim 1 was only three years old when Diaz-Colon sexually assaulted her by pulling her underwear to the side and spreading her vagina with his fingers. PSR ¶ 29. When she was interviewed by state authorities, however, the girl added that Diaz-Colon had repeatedly touched and kissed her buttocks, had kissed her vaginal area, and had hit her multiple times. Doc. 45 at 6; Doc. 67 at 39–40. Unfortunately, due to her young age and limited ability (or desire) to communicate, child-victim 1 disclosed little else about her interactions with Diaz-Colon. Doc. 45 at 6.

Not surprisingly, the accounts of child-victims 2 and 3—who are sisters and were seven and six years old, respectively, when Diaz-Colon sexually

---

[3]As previously explained, these interviews were filed under seal as exhibits to the United States' sentencing memorandum, *see* Doc. 45 at 3 n.2, 6 n.3, and also admitted into evidence during Diaz-Colon's sentencing hearing, *see* Doc. 67 at 11. Consequently, apart from Diaz-Colon's PSR, record citations in the discussion that follows will be to publicly available filings in this case, as they accurately convey the substance of the interviews without disclosing sensitive identifying information.

abused them on multiple occasions, PSR ¶ 16—were considerably more detailed and graphic. Child-victim 2 said that Diaz-Colon had repeatedly forced her to perform oral sex on him and had ejaculated in her mouth. Doc. 45 at 3; Doc. 67 at 37. He also anally and vaginally raped the girl, causing her excruciating pain in the process. Doc. 45 at 3–4; Doc. 67 at 37. Moreover, when she begged him to stop, Diaz-Colon responded by telling her to shut up, spanking her (at times with a belt), or taping her mouth shut. Doc. 45 at 4; Doc. 67 at 37. Diaz-Colon then compounded the horror of his actions by raping child-victim 3 in her presence, causing child-victim 2 to witness one of her sister's darkest moments. Doc. 45 at 4–5; Doc. 67 at 38–39. He also forced child-victim three to perform oral sex on him, and digitally penetrated her vagina. Doc. 45 at 5; Doc. 67 at 38–39.

Nor were child-victims 1, 2, and 3 Diaz-Colon's only minor victims, as he showed child-victim 2 a video of himself raping yet another child, who appeared to be about three years old. Doc. 45 at 4. And, further evidencing the extent of his depravity, when child-victim 2 questioned what he had done, Diaz-Colon responded: "'I don't care. She deserved it.'" *Id.* at 4 (quoting Ex. 1B at 24).

Apart from his egregious hands-on offenses, Diaz-Colon also maintained a large collection of particularly disturbing child pornography, which featured

bestiality, bondage, and a wide range of other sex acts, and depicted the sexual abuse of children as young as infants. Doc. 45 at 7; Doc. 67 at 41.

In these circumstances, a sentence that effectively amounts to life imprisonment was warranted to account for Diaz-Colon's egregious offenses and other relevant conduct; to protect vulnerable young children from his predatory behavior; to promote respect for the law that has obviously been lacking; and to discourage other pedophiles from committing child sex offenses. *See* 18 U.S.C. § 3553(a)(1)–(2)(A–C); *see, e.g., United States v. Trader,* 981 F.3d 961, 970 (11th Cir. 2020) (determining that similar considerations supported defendant's life sentence); *United States v. Johnson,* 451 F.3d 1239, 1244 (11th Cir. 2006) (affirming defendant's 140-year, statutory-maximum sentence in child-exploitation case for similar reasons and concluding that it was a "reasonable sentence").

On appeal, Diaz-Colon first argues that the district court failed to "meaningfully consider" materials and information that his counsel had submitted in mitigation of Diaz-Colon's sentence. *See* Diaz-Colon's brief at 21–24. Before inviting Diaz-Colon's counsel to argue in mitigation, however, the court expressly confirmed that it had reviewed the background materials included in the "mitigation appendix" that he had filed, Doc. 67 at 13, and it afforded Diaz-Colon's counsel ample opportunity to argue in support of a

sentence well below the guidelines-range sentence that the prosecutor had requested, *id.* at 14–34.

Notably, during this lengthy presentation, Diaz-Colon's counsel emphasized: (1) Diaz-Colon's difficult childhood, during which he had lost his grandfather to suicide at a young age, had been sexually abused by an older brother on two occasions, and had experienced mental-health struggles; (2) the supportive letters in Diaz-Colon's mitigation appendix; and (3) the comparatively benign assessment of a consulting psychologist opining that, with appropriate mental-health treatment, Diaz-Colon was unlikely to reoffend. Doc. 67 at 18–25, 28–30, 33. Diaz-Colon's counsel also discussed materials explaining that, without proper treatment, victims of child sex offenses often perpetuate the cycle of abuse as adults. *Id.* at 24–28, 33.

Before pronouncing Diaz-Colon's sentence, the district court thanked the parties for their "impassioned arguments," Doc. 67 at 65, and agreed that Diaz-Colon had "significant mitigation in his past based on how he was victimized," *id.* at 66–67. The court ultimately concluded, however, that Diaz-Colon's "horrific" offense conduct in this case (which the court appropriately characterized as "unspeakable") established that he is an extremely dangerous predator who must be separated from society for the remainder of his life. *Id.* at 67–69. Given the obvious gravity of these considerations—which necessarily

19

bear on several section 3553(a) sentencing factors—the court committed no error in affording them dispositive weight. *See, e.g., United States v. Gomez,* 955 F.3d 1250, 1257 (11th Cir. 2020) ("In fashioning a sentence, the district court enjoys discretion to give greater weight to one or more factors than to the others. We will not second-guess that decision, 'as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented.'") (citations omitted); *see also Trader,* 981 F.3d at 971 (explaining that district court considered "mitigating factors" defendant had raised but appropriately "concluded that, on balance, Trader still deserved a life sentence").

Of course, we acknowledge, as Diaz-Colon in his brief at 22–23 points out, that "a district court's unjustified reliance on any one [s]ection 3553(a) factor may be a symptom of an unreasonable sentence." *United States v. Pugh,* 515 F.3d 1179, 1191 (11th Cir. 2008). But that's not what happened here. Instead, as previously explained, the district court's bases for Diaz-Colon's sentence appropriately took into account several pertinent (and decidedly weighty) section 3553(a) factors. In any event, the court's emphasis on Diaz-Colon's egregious offenses and other relevant conduct, the utter devastation that he had left in his wake, and the obvious need to protect the public from his predatory behavior, Doc. 67 at 67–69, certainly was not "unjustified."

Diaz-Colon in his brief at 24 next argues that a lesser sentence would

have satisfied the "statutory purposes of sentencing." While that may be true,
since a lesser sentence still could have amounted to life imprisonment, "[a]
district court's sentence need not be the most appropriate one, it need only be a
reasonable one" under the circumstances. *United States v. Irey,* 612 F.3d 1160,
1191 (11th Cir. 2010) (en banc). And, as previously explained, the
circumstances of this case more than warranted a sentence that effectively
amounts to life imprisonment.

Diaz-Colon in his brief at 24 also asserts that a statutory-maximum
sentence is a "signal" of unreasonableness, but this Court has routinely
affirmed life sentences, or sentences that effectively amount to life, in other
serious child-exploitation cases. *See, e.g., Isaac,* 987 F.3d at 994–96
(determining that 960-month, statutory-maximum sentence for defendant
convicted of producing and possessing child pornography was not
unreasonable); *Trader,* 981 F.3d at 970–71 (affirming life sentence for
defendant convicted of child-exploitation offenses, including production of
child pornography); *Kirby,* 938 F.3d at 1258–59 (same, involving 1,440-month,
statutory-maximum sentence); *Sarras,* 575 F.3d at 1220–21 (same, involving
1,200-month, statutory-maximum sentence); *Johnson,* 451 F.3d at 1244
(concluding that 140-year, statutory-maximum sentence for producing and
distributing child pornography was "reasonable"); *United States v. Stevens,* 731

F. App'x 943, 944 (11th Cir. 2018) (affirming life sentence in case involving production and other child-exploitation offenses); *United States v. Harding,* 696 F. App'x 955, 958–59 (11th Cir. 2017) (same); *United States v. Graziotti,* 619 F. App'x 980, 981 (11th Cir. 2015) (rejecting substantive-reasonableness challenge to 210-year sentence by defendant convicted of producing, distributing, and possessing child pornography). The egregious facts of this case justified the district court's call for the same result here.

For all of these reasons, Diaz-Colon's 150-year, guidelines-range sentence is not substantively unreasonable.

## Conclusion

The United States requests that this Court affirm the judgment and sentence of the district court.

<div style="margin-left: 40%;">

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:    *s/ Todd B. Grandy*
TODD B. GRANDY
Assistant United States Attorney
Appellate Division
Florida Bar No. 992674
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6132
todd.grandy@usdoj.gov

</div>

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by CM/ECF on April 30, 2021, to:

KATHERINE HOWARD, ESQ.
FEDERAL PUBLIC DEFENDER'S OFFICE

*Counsel for Edgar Johan Diaz-Colon*

*s/ Todd B. Grandy*
TODD B. GRANDY
Assistant United States Attorney

gkpr/no/04/26/21

*b_Diaz-Colon, Edgar_US Response Brief_Final.docx*